UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
Freddie Knight, DIN: 18-A-4297
PLAINTIFF

-AGAINST-

AMENDED COMPLAINT
42 U.S.C. § 1983

JURY DEMAND
YES_____ NO_____

21-CV-06633-EAW

Commissioner Korkismen, M.D.,Medical
Director NYSDOCCS
DR. Grof, Facility's Medical Provider
Wyoming CF,
Superintendent, Sticht, Wyoming CF
(All parties, Individually and in their Official
capacities)
----------------------------------------------------------X

## I. COMPLAINT

Plaintiff(s) Freddie Knight, DIN: 18-A-4297, pro se, for his complaint state as follows:

## II. PARTIES, JURISDICTION AND VENUE

1.   Freddie Knight, DIN: 18-A-4297 was confined in a Wyoming Correctional Facility located at 3203 Dunbar Rd. in the city of Attica, in the state of New York zip code 14011. Plaintiff is currently confined at Woodbourne Correctional Facility, 99 Prison Rd.,/ P.O. Box 1000, Woodbourne New York 12788.

2.   Freddie Knight, DIN: 18-A-4297, is and was at all times mentioned herein, an adult citizen of the United States and a resident of the state of New York.

3.   Defendant, Korkismen, M.D. was at all relevant times herein Commissioner & Medical Director of NYSDOCCS.

4.   Defendant Grof, was at all relevant times herein the Medical Provider of Wyoming CF, with responsibilities for the health care of incarcerated individuals.

5.   Defendant, Thomas Sticht, was at all relevant times herein the Superintendent of Wyoming Correctional Facility, with responsibilities to oversee the operation and management of the correctional facility.

3

6. This action arises under and is brought pursuant to 42 U.S.C. Section 1983 to remedy the deprivation, under color of state law, of rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343.

7. This cause of action arose in the Western District of New York. Therefore, venue is proper under 28 U.S.C. Section 1391(b).

### III. PREVIOUS LAWSUITS BY PLAINTIFF

8. Plaintiff has filed no other lawsuits dealing with the same facts involved in this action or otherwise relating to his imprisonment.

### SYNOPSIS OF AMENDED COMPLAINT

DOCCS has continuously failed to accommodate plaintiff's disability and afford him adequate medical treatment, corrective lenses. On 6/26/18, Dr. Barry Hyman at AMCK Riker's Island Detention Center issued Plaintiff Corrective Lenses and sternly emphasized to plaintiff that he must consistently use the corrective lenses. Otherwise cataracts will form and further deteriorate his vision. Confiscated by an officer at Downstate C.F. Intake Division. Downstate medical Department advised plaintiff that he would be re-evaluated and re-fitted for corrective lenses by DOCCS affiliated Ophthalmologist. Plaintiff was seen by an Ophthalmologist while at Downstate C.F. and advised that **"the corrective lenses would be forward to him at his next facility"**.

In February 2019, at Riverview CF plaintiff has never received the corrective lenses and immediately reported the matter to the Riverview Medical Dept. Who scheduled plaintiff to be seen by another Ophthalmologist. This Ophthalmologist referred plaintiff to be seen by a Cornea Specialist at Upstate Medical M.D. Neerukonda was the physician. On 9/4/19, plaintiff was again seen by the Cornea Specialist who inquired "where are your corrective lenses"? And made medical documentation that plaintiff had never received the second ordered corrective lenses, cataracts would form and vision would deteriorate.

In February 2020, at Wyoming C.F. plaintiff was once again sent to see Cornea Specialist. Who again attempted to re-evaluate plaintiff's deteriorated vision and also inquired "where is your corrective lenses that was ordered". Only to discover that plaintiff was never issued the corrective lenses and cataracts had formed which drastically deteriorated plaintiff's vision. Prior to this appointment of 9/14/19, plaintiff was schedule for follow-up appointment 6 months prior. Which was cancelled for reasons unknown to plaintiff?

4

As a result of a two-year deprivation of corrective lenses, plaintiff now suffers with cataracts, continuous headaches, dizzy spells, sporadic neurological pain behind his eyes and the eminent possibility of the permanent loss of his vision. If appropriate actions are not taken in a reasonable time frame. Upon plaintiff's last appointment, the Ophthalmologist diagnosed plaintiff to be suffering with cataracts. As to this date, plaintiff has not received any medical treatment for the escalating actaracts. DOCCS's assertion that due to COVID-19 virus, treatment would be delayed is totally unacceptable. Where alternative means has not been considered.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Under Grievance # WYO-0220-20, plaintiff "specifically addresses" the continuous deprivation of adequate medical for "Corrective Lenses" Plaintiff has been subject to such deprivation for over 2 years since his corrective lenses were confiscated at Downstate CF Intake Unit, when he became a ward of the state in November 2018. Under grievance # WYO-0220-20, plaintiff litigates in details the 'medical history to the present date' of such deprivation. Where "corrective were ordered several times by Cornea Specialist but never issued to Plaintiff". Due to such deprivations cataracts have formed further deteriorating Plaintiff's vision. Plaintiff now suffers with continuous headaches, dizzy spells, sporadic neurological pain behind his eyes and the eminent possibility of the permanent loss of his vision. As to this date, Plaintiff has not even been issued any medical treatment for the escalating cataracts. This only demonstrates the continuous deprivation of adequate medical care here at Wyoming CF (see Griev # WYO-0220-20).

10. IGRC's response to Plaintiff's contention was accepted in part and Plaintiff issue of "cataracts were already addressed in WYO-0201-20. Griev # WYO-0201-20, specifically addresses an F.O.I.L. Denial. The issue of grievant cataracts is totally mis-presented according to Plaintiff's present grievance complaint. IGRC mentioned the fact that grievant has not been to sick call but seen by a provider on 10/12/20 & 10/14/20, where he requested to medically unassigned and a West Compound permit where he currently reside. He was issued a permit to be programmed on the West side as he has complained of shortness of breath. There is no indication of complaints of headaches, dizzy spells, sporadic neurological pain (See IGRC's reply).

11. Appeal to Superintendent presented an inquiry, why should grievant have to go to sick call to remind the Medical Department of his medical diagnosis of cataracts and to provide treatment. When they are in position of the medical

5

consultation from the Opthalamologist. IGRC's replied that "there is no indication of complaint of headaches, dizzy spells is totally incorrect". Where grievant was prescribed **MECLIZINE 12.5 MG.** for **VERTIGO. However, grievant continuously strains too see without corrective lenses and in combination of cataracts play a substantial part of his physical composition.**

**12.** The Superintendent's response that the Department's single overriding focus at this time is to make every reasonable effort too ensure the health and protection of all incarcerated individual and staff relative to the COVID-19 pandemic. (See Supt.'s Appeal: par. 3). However, the Department overriding focus does not allow for Superintendent to breach its "ministerial duties" too neglect a duty of care owed to grievant. Where due to Supt. ministerial negligence grievant is now placed in an emergent situation that may result in a total loss of his vision if not provided corrective lenses in a timely fashion. During COVID-19 pandemic, the Department felt confident that Wyoming CF can fulfill its administrative duties and allow academic and vocational programming to remain operative. The Superintendent's failure to take alternative measure to ensure the health and protection of grievant and allow a qualified Ophthalmologist to issue grievant the "Corrective Lenses" that -that was were in the medical Dept.'s possession either lost or misplaced by medical. A computer search of the location of corrective lenses verified its last location. Nevertheless, it should not take over two years to issue corrective lenses.

**13.** Therefore, in light of the overwhelming evidence that the medical department breached its duty which clearly caused the grievant further injuries of vision loss where cataracts have formed further deteriorating grievant's vision. Furthermore, it can not be said with reasonable assurance that the foreseeable loss of grievant's vision is not an emergent situation. Nor sustain that grievant was provided adequate medical care in a timely fashion in accordance to the standard set forth under DOCCS policy and the A.D.A. and Rehabilitation Act.

**14.** Wherefore, for the reasons stated herein grievant's appeal should be granted in its entirety. (See Exhibit-A: Administrative Exhaustion).

### V. STATEMENT OF CLAIM

**15.** At all relevant times herein, defendant[s] Medical Commisssioner Korkismen, M.D NYSDOCCS.; Superintendent Thomas Sticht of WYOMING CF; and Doctor Grof Medical Provider of WYOMING CF were *"persons"* for purposes of 42 U.S.C. Section 1983 and acted under color of law to deprive plaintiff's of his constitutional rights, as set forth more fully below. Plaintiff contends that defendants Medical Commisssioner Korkismen, M.D NYSDOCCS.; Superintendent Thomas Sticht of WYOMING CF; and Doctor Grof Medical Provider of WYOMING CF were deliberate indifference to his serious medical

needs, in violation of his Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment, in the form of inadequate medical care by failing to adequately supply Plaintiff with corrective lenses in a timely fashion. Secondly, Plaintiff contends that Defendant[s] Medical Commisssioner Korkismen, M.D NYSDOCCS.; Superintendent Thomas Sticht of WYOMING CF; and Doctor Grof Medical Provider of WYOMING CF violated plaintiff's right under the American Disability Act (A.D.A) 42 U.S.C. § 12131, by denying him access to programs and services available to non-disabled inmates, by subjecting him to discrimination by virtue of his disability, by failing to provide corrective lenses for over the past 2½ years.

## VI. STATEMENT OF FACTS

### MEDICAL CARE AND TREATMENT

**16.** To prove deliberate indifference to serious medical needs, in violation of Eighth Amendment a prisoner must prove two elements (1) that the alleged deprivation is objectively, sufficiently serious; and (2) that the official in question had a sufficiently culpable state of mind. According to A.D.A., plaintiff is registered as a legally blind recipient. In June 2018, DR. Barry Hyman at AMCK Rikers Island Detention Center issued plaintiff corrective lenses (contact lenses) sternly emphasized and documented that "Plaintiff must consistently use corrective lenses; otherwise cataracts will form and deteriorate his vision". (See Exhibit-A). When plaintiff became a ward of the state in November 2018, those corrective lenses were confiscated by a correction officer at Downstate Correctional Facility Intake Unit. Plaintiff was seen by an Ophthalmologist while at Downstate CF and advised tha "the corrective lenses would before forward to him at next facility. **This came to no avail.** DOCCS' medical policy is "all medical procedures requiring a Medical Specialist and **all** medical apparatus that must be issued to an inmate **must first be approved by Albany Medical Director prior to any procedure or issued to any inmate. (see Exec Law §259-i)." Defendant Commissioner Korkismen, M.D.** sternly enforces "strict compliance" of the aforementioned Directive mandate. Here in the case at bar, as early as 2018, DOCCS medical staff and physician's evaluation of Plaintiff indicating that he was experiencing a continuous loss of sight due to being deprived corrective lenses. Here in the instant matter, Defendant Commissioner Korkismen (DOCCS) has approved over 15 medical appointments to either Ophthalmologist or Cornea Specialist for the past 2½ years. With results that only repeated the phrase that "corrective lenses were order or will be re-ordered and we're going to re-examine your eyes". (**See Exhibit-B:** all medical consultation). Deliberate indifference is a mental state equivalent to subjective recklessness… This mental state requires that the charged official act or failed to act while actually aware of a substantial risk that inmate harm will result, Cash v. Cty of Erie, 654 F.3rd 324, 335 [2nd Cir. 2011]

(stating that " an affirmative duty, by its nature, implies a proactive responsibility to asses the risks of harm presented by given circumstances and to take reasonable measures in advance of harm occurring, not simply to respond to harm only after they occurred"). Defendant, Commissioner Korkismen, M.D., has exhibit such characteristic when he has continuously approved plaintiff for numerous appointments with Ophthalmologist without evaluating or questioning why plaintiff has not been issued corrective lenses and why the physician's consultations continuously repeated <u>corrective lenses has been ordered and plaintiff's vision has become worse for over the past two and a half years and cataract has formed further deteriorating plaintiff vision… When according to DOCCS' Medical Data, corrective lenses were approved and allegedly ordered on several occasions</u>. DR. Korkismen has practice medicine for over 30 years in the DOCCS and possesses reasonable knowledge of the acute risk of injury that would occur to patient deprived corrective lenses over a period of time. As Medical Commissioner of DOCCS, Dr. Korkismen was grossly negligent in supervising subordinates responsible for such deprivation in his admission. The Second Circuit equates gross negligence with recklessness, defining it as the "kind of conduct…where {the} defendant has reason to know of facts creating a high degree of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk". **Poe, 282 F.3d at 140 n. 14** (quoting **Bryant v. Maffucci, 923 F.2d 979, 985 (2nd Cir. 1991**).

17.   Indeed, simple gross negligence is not enough to establish personal involvement. However, plaintiff has demonstrated in a claim of supervisory liability, presenting some evidence that supervisory official knew or should have known of a substantial risk that constitutional right would be violated due to their lack of supervision that the officials consciously disregard the risk by failing to supervise, and that such disregard caused a constitutional violation committed by subordinates. Plaintiff further asserts that such deprivation of corrective lenses (contact lenses) constitute deliberate indifference to his "serious medical needs" within the meaning of **Estelle v. Gamble, 429 U.S. at 103; 97 S.Ct. 290 (quoting Gregg v. Georgia, 428 U.S. 153, 173; 96 S. Ct. 2909, 2925; 49 L.Ed.2d 859 (1976)).** Although the point in Gamble is that "deliberate indifference to serious medical needs of prisoners constitute the unnecessary and wonton infliction of pain'. proscribed by the Eighth Amendment" Id. At **104; 97 S. Ct. at 290.** So long as the medical need to which the correction officials were deliberate indifference is "serious," the standard of the Eighth Amendment is violated. Indeed, the required prescribed contact lenses were to avoid double vision, since he suffers with vertical, and essential to prevent cataracts from forming and the further loss of his vision. Though these consequences do not inevitably entail pain, "they adequately meet the test of *suffering* that Gamble recognized is inconsistent with the "contemporary standard of decency". Id at 103; **97 S. Ct. at 290.** Such visual deficiencies can readily cause a person to fall or walk into objects and Plaintiff asserts that he has

deficiencies such occurrences in the past to the present date until correct lenses were finally provided in May of 2021. Nevertheless, Plaintiff suffered injuries as a consequence of Korkismen's negligence.

18. Medical Commissioner Korkismen also violated Title II of the American Disability Act. Plaintiff's computerized medical data has demonstrated the continuous deprivation of corrective lenses that were already approved an ordered on numerous occasions. Then eventually delivered to facility but never issued to Plaintiff. However, non-disabled individual who also were approved for corrective lenses, were issued their corrective lenses in a timely fashion (within 30-to-60 days from the time of approval by Medical Commissioner Korkismen's office). Due to such urgency of Plaintiff's needs of corrective lenses to not only correct his visual impairment, but also to prevent cataracts from occurring. Came to no avail! Reasonable inference can infer that plaintiff suffered discriminatory conduct due to his disability. In which he was deprived adequate medical service. As a result of such deprivation the irreparable injury that resulted with cataracts further deteriorating plaintiff's vision could have been easily prevented if plaintiff was issued corrective lenses in a timely fashion. For violation of plaintiff's constitutional right under the Eighth Amendment and under the ADA. Compensatory damages in the amount of $250,000.00 and punitive damages in the amount of $15,000.00 would be reasonable.

19. Plaintiff further contends that **Defendant, former Superintendent Thomas Sticht** of Wyoming Correctional Facility "acted" with deliberate indifference to his medical needs in violation of his Eigtht Amendment right. When he intentionally and grossly neglects in supervising subordinates who violated Plaintiff's constitutional right. To prevail on a claim of supervisory liability under 42 U.S.C. § 1983, a plaintiff must show some evidence that supervisory official knew or should have known of the substantial risk that a constitutional right would be violated due to lack of supervision, that the official consciously disregard the risk by failing adequately to supervise, and that such disregard caused a constitutional violation committed by subordinates.

20. Here in the case at bar, former Superintendent Thomas Sticht 'became personally' involved in the instant matter prior to exhausting any administrative remedy or the filing of any grievance complaints in relation to the two years deprivation of corrective lenses. When the Legal Aid Society personally addressed the Superintendent on two separate occasions on the plaintiff's behalf in regards to deprivation of corrective lenses, in violation of his constitutional right, as well as plaintiff's right under the ADA. Which came to na avail! **(See Exhibit-C: Letters from the Legal Aid Society, addressed to Supt**.) Superintendent Sticht chose to disregard the seriousness of the risk of irreparable damage caused by the continuous extreme deprivation of corrective lenses owned to plaintiff. He failed to

9

take any initial action or investigate as to whether the **Medical Department were in possession of corrective lenses** owed to plaintiff at the time the Legal Aid Society addressed him about plaintiff's medical complaint. And if so, why they were not issued to plaintiff in a timely fashion as other incarcerated person were issued corrective lenses. The causation between that indifference resulted in the irreparable damage to plaintiff's vision. Defendant Sticht cannot refute the notion that they provided inadequate medical treatment which resulted in irreparable injury to plaintiff in violation of plaintiff's protective rights under the constitution. For violation of plaintiff's constitutional right under the Eighth Amendment and under the ADA, compensatory damages in the amount of $250,000.00 and punitive damages in the amount of $15,000.00 would be reasonable.

21. Plaintiff further contends that **Defendant, DOCTOR GROF** of Wyoming Correctional Facility "acted" with deliberate indifference to his medical needs in violation of his Eighth Amendment right. When she intentionally and grossly deprived plaintiff to adequate medical care, Defendant DR. Grof has been employed at Wyoming Correctional Facility as facility medical physician for over five years. In 2019, plaintiff FREDDIE KNIGHT was added to her case load. After a thorough review of plaitiff's medical history. Plaintiff was appointed an initial interview. During this interview, Dr. Grof expressed her acknowledgement of plaintiff various health issues. Especially the fact of plaintiff's urgent need of corrective lenses. Plaintiff inquired during this interview about receiving the corrective lenses. Reading off the computer she stated, "According to the DOCCS computerized medical data before me I see that you have been seen by the Cornea Specialist while at Riverview C.F. and corrective lenses were ordered for you". According to the computer, **they are here at this facility**. You will be schedule in a later date to pick them up. Approximately 10 days later, plaintiff was given an appointment to report to medical. Assuming it was to pick up his contact lenses. However, an Ophthalmologist (whom issues corrective lenses to inmates) stated that: "you will be scheduled to see another Ophthalmologist for re-evaluation": and never was issued the corrective lenses. According to medical data, this repeated cycle with Defendant DR. GROF of the continuous scheduling and re-scheduling with an Ophthalmologist rendering no positive results occurred for over the past year and a half. Plaintiff's vision became worse and complained to Dr. Grof. Who determined that plaintiff suffered with VERTIGO was prescribed **MECLIZINE 12.5 MG for VERTIGO** and once again told that he would be scheduled to see the Ophthalmologist about this issue? By this point, plaintiff had been markedly declined. According to the consultation of __/__/2019, by Ophthalmologist, plaintiff now suffers with cataracts in both eyes. This is due to being deprived corrective lenses in a timely fashion. As to this date, no surgical recommendation was suggested for the removed of cataracts. Which is the formally the basic medical treatment required for one who suffers with cataracts. A facility physician acts with deliberate indifference when she knows of and disregards an excessive

10

risk to inmate health or safety. As a matter of record, Dr. Grof was aware of plaintiff's urgency for corrective lenses and aware that such delay would result in diminished eyesight and cataract. However, the severity of the deprivation and the grossly acts of intentionally deception by Dr. Grof cannot be overlooked. Who knew at the time of plaintiff's initial interview that corrective lenses **were in the medical facility's possession**. Yet, initiated a continuous ineffective course of treatment by Dr. Grof of the numerous scheduling of plaintiff to be seen by either a Cornea Specialist or an Ophthalmologist. But omits in the consultation addressed to Ophthalmologist and Cornea Specialist "that due to lost or damage corrective lenses needs to be re-placed/re-ordered". (See Exhibit –D). Due to such omission, the Ophthalmologist and Cornea Specialist were left in a dilemma. Constantly inquiring with plaintiff where your corrective lenses that were ordered are. We'll re-evaluate your present condition and schedule you for a follow-up. This repeated cycle occurred over 6 times within the past 2 years rendered no true results. Such omission from the medical consultation of the need to replace or re-order corrective lenses. Constitutes more than mere negligence but deliberate indifference on Dr. Grof. Where defendant's action were the result of deliberate indifference (1999 WL 753142 at 6). In addition, as a result of Dr. Grof's ineffective treatment and the delay in to issuing plaintiff corrective lenses in a timely fashion. Plaintiff suffers with diminished and deteriorating eyesight, and cataracts. Defendant Dr. Grof. Cannot refute the notion that she provided inadequate medical treatment with resulted in irreparable injury to plaintiff's protective rights under the constitution. For violation of plaintiff's constitutional right under the Eighth and Fourteenth Amendment and under the ADA compensatory damages in the amount of $250,000.00 and punitive damages in the amount of $15,000.00 would be reasonable.

## 22. PRAYER FOR RELIEF

Plaintiff as this Honorable Court an Order declaring that the above-named Defendants have acted in violation of the United States Constitution, and further request an Order compelling each Defendants to pay $250,000.000 for compensatory damages and $15,000.00 for punitive damages for the Civil Rights violation of the plaintiff's under the Eighth and Fourteenth Amendment of the U.S. Constitution.

16. On 4/28/2022 plaintiff's grievance appeal was submitted to Superintendent Howard at which point he stated that "no follow up treatment or surgery was recommended".

17. In general defendants showed deliberate Indifference to the medical needs of plaintiff. Medical care at Woodbourne CF is inadequate and unprofessional when assessing plaintiff's potential for future health risk and affection.

11

## VII. PRAYER FOR RELIEF

**18.** Plaintiffs request an injunction order compelling defendants to stop denying medical attention.

19. Plaintiff request, that the Courts will award him $250,000.00 compensatory damages cost: for the surgery procedure requires correcting this health problem. And for years of excruciated pain, suffering caused by the defendants' failure to provide the treatment as the Court Deem sufficient.

Signed this 25TH day of November 2022

_Freddie Knight_
Freddie Knight, DIN: 18-A-4297

I declare under penalty of perjury that the foregoing is true and correct.

_Freddie Knight_
Freddie Knight, DIN: 18-A-4297

Sworn to before me this

25 day of November, 2022

_Eric Petersen_
**NOTARY PUBLIC**
ERIC DAVID PETERSEN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01PE6391706
Qualified in Delaware County
My Commission Expires May 13, 20 23

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
Freddie Knight, DIN: 18-A-4297
PLAINTIFF

AMENDED COMPLAINT
AFFIDAVIT
42 U.S.C. § 1983

-AGAINST-

JURY DEMAND
YES_____ NO_____

21-CV-06633-EAW

Commissioner Korkismen, M.D., Medical
Director NYSDOCCS
DR. Grof, Facility's Medical Provider
Wyoming CF,
Superintendent, Sticht, Wyoming CF
(All parties, Individually and in their Official
capacities)
-------------------------------------------------------X

## AFFIDAVIT OF Freddie Knight, DIN: 18-A-4297

I, Freddie Knight, DIN: 18-A-4297 is the incarcerated individual being duly sworn according to the law deposes and says that I am the plaintiff in the above entitled proceeding.

That on this 25 day of November 2022, I placed the following:

**Affidavit**
**Notice of Motion to Proceed In Forma Pauperis;**
**Application to the Court to Request for Counsel;**
**Authorization**

Exclusive in The Woodbourne Correctional Facility United States Postal Mailbox.

All of the information I have submitted in support of my request, plaintiff's case is true and correct.

Freddie Knight, DIN: 18-A-4297

Sworn to before me this

25 day of November, 2022

_____
**NOTARY PUBLIC**

ERIC DAVID PETERSEN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01PE6391706
Qualified in Delaware County
My Commission Expires May 13, 2023

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------X
Freddie Knight, DIN: 18-A-4297                               AMENDED COMPLAINT
PLAINTIFF

                                                                  ORDER TO SHOW CAUSE
                                                                  PRELIMINARY INJUNCTION &
-AGAINST-                              TEMPORARY RESTRAINING ORDER

                                                                  42 U.S.C § 1983
Commissioner Korkismen, M.D.,Medical        CIVIL ACTION No.
Director NYSDOCCS                                6:21-CV-06633-EAW
DR. Grof, Facility's Medical Provider
Wyoming CF,                                                JURY DEMAND
Superintendent, Sticht, Wyoming CF            YES____     NO_____
(All parties, Individually and in their Official
capacities)
----------------------------------------------------X

      Upon the complaint, supporting affidavits of plaintiffs sworn to the ____ day of _____, 2022, and the memorandum of law submitted herewith, it is:

      **ORDERED** that the defendants: Commissioner Korkismen Medical Director, NYSDOCCS; Thomas Sticht, Superintendent of Wyoming CF, DR. Grof, Wyoming Medical Provider show cause in room ____ of the United States District Court Western District of New York, U.S. Courthouse, 2 Niagara Sq., Buffalo NY 14202 on the ___ day of _____, 2022, at ___ o'clock, or as soon thereafter as counsel may be heard, why preliminary injunction should not issue pursuant to Rule 65(a) of the Federal Rules of Civil Procedure enjoining the defendants, their successors in office, agents and employees and all other persons acting in concert and participation with them, from. [a precise statement of the actions you want the preliminary injunction to cover].

      **IT IS FURTHER ORDERED** that effective immediately, and pending the hearing and determination of this order to show cause, the defendants: John Morely, David Howard, Nurse Administrative of Woodbourne CF, Dr. Ruiz of Woodbourne CF, Dr. Harris Baker of Woodbourne CF, Dr. Aaron Roth affiliated with Sing Sing CF, and all persons acting in concert or participation with them, are

14

restrained from retaliatory acts against my person or property, denying medical treatment upon request, unwanted transfers outside this HUB.

**IT IS FURTHER ORDERED** that personal service of a copy of this order and annexed affidavit upon the defendants or their counsel on or before [date], shall be deemed good and sufficient service thereof.

Dated:<br>
United States District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
Freddie Knight, DIN: 18-A-4297
PLAINTIFF

                AMENDED COMPLAINT

                CERTIFICATE OF SERVICE
    -AGAINST-             42 U.S.C. § 1983

                JURY DEMAND
                YES_____ NO_____

                21-CV-06633-EAW

Commissioner Korkismen, M.D., Medical Director
NYSDOCCS
DR. Grof, Facility's Medical Provider Wyoming CF,
Superintendent, Sticht, Wyoming CF
(All parties, Individually and in their Official
capacities)
-------------------------------------------------------X

I, <u>Freddie Knight, DIN: 18-A-4297</u> served a copy of the attached papers:

    **AMENDED COMPLAINT (SUMMONS)**

    **AMENDED COMPLAINT (COMPLAINT)**

    **AMENDED COMPLAINT (AFFIDAVIT)**

    **AMENDED COMPLAINT (ORDER TO SHOW CAUSE-PRELIMINARY**

    **INJUNCTION &                                    TEMPORARY**

    **RESTRAINING ORDER)**

    **AMENDED COMPLAINT (NOTICE OF MOTION TO PROCEED IN**

    **FORMA PAUPERIS)**

    **AMENDED COMPLAINT (APPICATION FOR REQUEST COUNSEL)**

    **PRISONER AUTHORIZATION**

    **CERTIFICATE OF SERVICE**

Upon all other parties in this case by mailing these documents to the following persons

TO:    COMMISSIONER KORKISMEN, M.D.
         MEDICAL DIRECTOR
         1220 WASHINGTON AVENUE
         ALBANY NY 12226

TO:    DR. GROF, MEDICAL PROVIDER
         WYOMING CORR. FAC.
         3203 DUNBAR RD.,
         ATTICA, NEW YORK 14011-0501

TO:    THOMAS STICHT, SUPERINTENDENT

WYOMING CORR. FAC.
3203 DUNBAR RD.,
ATTICA, NEW YORK 14011-0501

On 25 day of November, 2022

I declare under penalty that the foregoing is true and correct, to the best of my knowledge, information and belief.

Executed on: 11/25/2022

Respectfully Submitted

Freddie Knight, DIN: 18-A-4297
Pro Se

Sworn to before me this

25 day of November, 2022

_____
NOTARY PUBLIC

ERIC DAVID PETERSEN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01PE6391706
Qualified in Delaware County
My Commission Expires May 13, 20 23

21

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
Freddie Knight, DIN: 18-A-4297
PLAINTIFF

-AGAINST-

Commissioner Korkismen, M.D., Medical
Director NYSDOCCS
DR. Grof, Facility's Medical Provider
Wyoming CF,
Superintendent, Sticht, Wyoming CF
(All parties, Individually and in their Official
capacities)
--------------------------------------------------------X

AMENDED COMPLAINT
42 U.S.C. § 1983

JURY DEMAND
YES_____ NO_____

21-cv-06633-EAW

## SUMMONS IN A CIVIL ACTION

TO: COMMISSIONER KORKISMEN, M.D.
MEDICAL DIRECTOR
1220 WASHINGTON AVENUE
ALBANY NY 12226

TO: DR. GROF, MEDICAL PROVIDER
WYOMING CORR. FAC.
3203 DUNBAR RD.,
ATTICA, NEW YORK 14011-0501

TO: THOMAS STICHT, SUPERINTENDENT
WYOMING CORR. FAC.
3203 DUNBAR RD.,
ATTICA, NEW YORK 14011-0501

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) – you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or

1

motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

        Freddie Knight, DIN: 18-A-4297
        Woodbourne Correctional Facility
        99 Prison Rd.,/ P.O. Box 1000
        Woodbourne, New York 12788

    If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the Court.

Date: November 25TH, 2022        CLERK OF THE COURT
Signature of Clerk or Deputy Clerk

FREDDIE Knight
#18-A-4297
Woodbourne Corr. Fac.
99 Prison Rd
Woodbourne NY. 12788

21-cv-

USDC - WDNY
JAN 0 3 2023
BUFFALO



USPS TRACKING #
9505 5158 3671 2361 1557 78

SHIP TO:
2 NIAGARA SQ
BUFFALO NY 14202-3350

EXPECTED DELIVERY DAY: 12/29/22

C030

RDC 04
0 Lb 14.20 Oz

PRIORITY MAIL®

US POSTAGE PAID
Origin: 12788
12/27/22
3594700332-07
$0.00

Retail

UNITED STATES POSTAL SERVICE

U.S. District
Western District
U.S. Court House
2 Niagara S[q]
Buffalo, NY

FREDDIE Knight
#18-A-4299
Woodbourne Corr. Fac.
99 Prison Rd
Woodbourne NY. 12788



SHIP TO:
2 NIAGARA SQ
BUFFALO NY 14202-3350

USPS PRIORITY MAIL
$0.00
Origin: 12788
12/27/22
3594700332-07
0 Lb 14.20 Oz
Expected Delivery Day: 12/29/22
RDC 04
C030

U.S. DiSTRiCT COURT
WESTERN DiSTRiCT oF NY
U.S. COURT HOUSE
2 Niagara Sq.
Buffalo, NY. 14202

USDC - WDNY
JAN 0 3 2023
BUFFALO

21-cv-06633

WOODBOURNE CORRECTIONAL FACILITY